W. T. MOTT v. ATLANTIC COAST LINE RAILROAD COMPANY.

(Filed 5 November, 1913.)

**Carriers of Passengers—Wrongful Ejection—Negligence.**

> In this action against a railroad company for wrongfully eject-
> ing the plaintiff from the train, there was conflicting evidence,
> and in behalf of the plaintiff that while asleep on the train he
> was carried by his destination to which he had purchased a
> ticket, and at his insistence, the conductor carried him to the
> next station, where, changing his destination for his home beyond,
> he procured a ticket to that place from the railroad agent, again
> boarded the train and the conductor took up his ticket. There-
> after the conductor insisted that he would retain the ticket as
> a part payment for his fare from his original destination to the
> place he had bought his second ticket, and demanded a cash fare
> from the latter place to his then destination. Upon his refusal
> to pay the cash fare, he was put off the train at a place where
> there was no station or people living: *Held,* (1) A motion as
> of nonsuit upon the evidence was properly refused; (2) Under
> a correct instruction, upon the evidence, the verdict in this case
> established as a fact that the plaintiff was wrongfully ejected
> from the train, after the conductor had accepted and retained his
> ticket, at a place forbidden by statute, and actionable negligence
> has been found.

CLARK, C. J., concurring.

APPEAL by defendant from *Ferguson, J.,* at April Term, 1913,
of COLUMBUS.

This is an action to recover damages for the wrongful ejec-
tion of the plaintiff from the defendant's train.

According to the plaintiff's evidence, he bought a ticket from
the defendant's agent at Wilmington, N. C., on 20 April, 1905,
for his passage from Wilmington to Farmers, N. C., on defend-
ant's road; that he boarded the train at Wilmington on that
date, and before he reached Farmers he went to sleep and did
not get off the train there, because he was asleep; that he had
on that day been discharged from the hospital, and took the
train to go to his father's, who lived at Farmers. After the
train passed Farmers the conductor came to him about the time
the train reached Hallsboro station and said: "Your ticket

read Farmers. Why didn't you get off there?" That he told the conductor he was asleep and did not know when he reached Farmers; conductor told plaintiff that he would have to pay his fare or get off the train; the plaintiff told the conductor: "He guessed he would have to carry him until he met the next train and bring him back to Farmers." When the train reached Whiteville, plaintiff got off and bought a ticket from White-ville to Cerro Gordo; got back on train to go to Cerro Gordo, where he lived. After the plaintiff boarded the train, the con-ductor came through to take up tickets. Plaintiff gave con-ductor his ticket bought at Whiteville; conductor punched it and put it in his pocket. Conductor came back and said: "Now, if you don't pay your fare from Farmers to Whiteville, I will put you off the train." The plaintiff refused to pay fare from Farmers to Whiteville; conductor then said he would keep ticket for a part of fare from Farmers to Whiteville; conductor had train stopped and put plaintiff off train about 3½ miles from Whiteville, where there were no houses and no people living, and no depot or station. Plaintiff asked conductor to let him go in the baggage car and get his bicycle in order that he might not be forced to walk to the next station, which the conductor refused to do. Plaintiff had to walk from where he was put off the train to Chadbourn, a distance of 3½ miles. The plaintiff came to Whiteville the next day and went to the railroad agent and asked him if he had record of the ticket he bought the day before. It is 14 miles from Whiteville to Cerro Gordo. Plaintiff was not drunk, but had taken a drink. Plain-tiff was the only witness offered in his own behalf. At the close of the plaintiff's evidence the defendant moved under section 539 of the Revisal of 1905 for judgment as in case of nonsuit. Motion overruled. Defendant excepted.

His Honor charged the jury, among other things: "If the jury find from the greater weight of the evidence that the plain-tiff, after purchasing this ticket at Whiteville, got back on the same train at Whiteville and gave the conductor this ticket for his passage on from Whiteville to Cerro Gordo, and the con-ductor took the ticket, and then demanded of the plaintiff his

MOTT v. R. R.

fare from Farmers to Whiteville, and the conductor stopped the train and put plaintiff off because he refused to pay his fare from Farmers to Whiteville, then the defendant wrongfully ejected the plaintiff from his train, and you should answer the first issue 'Yes.'" Defendant excepted.

There was a verdict and judgment in favor of the plaintiff, and the defendant appealed.

*Jackson Greer and Lewis & Lyon for plaintiff.*

*George B. Elliott, A. C. Chalmers, Davis & Davis, and Schulken, Toon & Schulken for defendant.*

PER CURIAM. There is ample evidence to sustain the plaintiff's cause of action, and we find no error in the trial.

The verdict establishes the fact that the plaintiff was ejected from the train at a place forbidden by statute, and after the conductor had accepted and retained his ticket, and upon either ground the judgment should be affirmed.

No error.

CLARK, C. J., concurring: The complaint alleges that on 20 April, 1905, the plaintiff bought a ticket at Whiteville for Cerro Gordo, and was put off the train halfway between Whiteville and Chadbourn, at a place where there were no houses or people living nearby and which was not a usual stopping place; that he had a bicycle in the baggage coach, which he asked to get, that he might ride to the next station, 3½ miles off; that this was refused, and he had to walk to said station, where he got a conveyance to take him home, to Cerro Gordo. These allegations were not contradicted by any evidence. The defendant relied on the defense set up in the answer, that the plaintiff had bought a ticket that day at Wilmington, on the same train, to Farmers, 14 miles from Wilmington; that he did not get off at Farmers, and the conductor permitted him to go on 32 miles further to Whiteville, where he got off and purchased the ticket to Cerro Gordo; that after the train left Whiteville the conductor demanded the fare from Farmers to Whiteville, and being refused, he put the plaintiff off, stopping the train to do so.

164—24

The plaintiff's evidence is that when he got to Farmers he was asleep, but he admits that he was drinking some, and left a quart of liquor on the train when he was put off. He says that the conductor carried him on to Whiteville because he insisted he should be carried on to meet the next train going back to Farmers. He further testified that the conductor took up his ticket from Whiteville to Cerro Gordo, punched it and put it in his pocket, and then, after going a few feet, returned and told him that he must pay the fare from Farmers to Whiteville or he would put him off; that he had no money to do this, and the conductor put him off. The conductor says that he did not take up the ticket, but that he demanded full pay from Farmers to Whiteville, and put him off because it was not paid. The conductor says that he first discovered that the plaintiff had overpassed his station at Hallsboro, which was 7 miles west of Farmers; but that he carried him on to Whiteville and told him to get off there.

The court charged the jury that if "the plaintiff got off the train and bought a ticket of defendant's agent at Whiteville for passage to Cerro Gordo, that this was a new contract which entitled the plaintiff to travel on defendant's train to Cerro Gordo, and that if the jury should find from the greater weight of evidence that the conductor took up this ticket and then afterwards demanded of the plaintiff his fare from Farmers to Whiteville, and on his failure to pay the same the conductor stopped the train and ejected the plaintiff, the jury should answer the first issue "Yes." This seems to be the only controverted fact, and the jury responded "Yes."

The defendant requires payment of fare in advance. Whether the plaintiff passed the station at Farmers because he was asleep, as he says, or because he was drunk or shamming, a.1 the defendant contends, when the conductor ascertained at Hallsboro, the next station, as he says he did, that the plaintiff was still on the train, it was his duty then and there to require him to leave, and this controversy would not have arisen. That he permitted the plaintiff to ride to Whiteville, 32 miles beyond Farmers, constituted a debt from plaintiff to the company, un-

less, as the plaintiff seems to contend, this was done because proper notice was not given at Farmers, and the conductor allowed him to come on to meet the train going back to Farmers.

The defendant relies upon *Pickens v. R. R.*, 104 N. C., 312. In that case the Court held that when a passenger refuses to pay his fare and the conductor is forced to stop the train, at a station where it would otherwise not have stopped regularly, thus causing delay, the conductor may refuse the tender of the fare unless it is made before the passenger puts him to the trouble of stopping. The Court then adds: "When the passenger gets off at a regular depot and gets a ticket, this constitutes a new contract, and will entitle him to passage—certainly if he tenders the money due for a passage up to that point; and according to some authorities without such tender." The defendant quotes *Manning v. R. R.*, 16 L. R. A., 55, where the Court held that the conductor was not required to accept the ticket unless the passenger tendered the back fare. On the contrary, in *R. R. v. Bryan*, 90 Ill., 133, the Court held: "If the company could debar appellee from traveling on that trip for such reason, it could do so on any subsequent trip." But we do not need to pass on this point, in this case, for the jury find that the conductor accepted the ticket.

The train was not stopped at Whiteville to put the plaintiff off, as in the *Pickens case*. On the contrary, he got off when the train stopped at the regular station, and bought the ticket which entitled him to be carried to Cerro Gordo, and the jury find that the conductor accepted the ticket. He was rightfully on the train, and hence his ejectment was wrongful.

The ejectment was also wrongful, if it had otherwise been rightful, because the plaintiff was put off (his bicycle which was in the baggage car being also refused him) at a place which was not a "usual stopping place, nor near any dwelling-house." This is forbidden by Revisal, 2629. These facts are alleged in the complaint, and the testimony of the plaintiff to that effect is not controverted.

The Constitution, Art. IV, sec. 8, gives this Court "general supervision and control over the proceedings of the inferior courts." We should not, therefore, pass over without notice the fact that it appears in this record that the occurrence, which is the foundation of this action, took place 20 April, 1905, and though the summons was issued 9 August, 1905, this appeal comes up from a trial in April, 1913, a delay of eight years. Such delays bring reproach upon the administration of justice, costs accumulate, and the memory of witnesses becomes dim. We recently had an appeal from that section of the State which had been pending fifteen years, but in that instance there had been four trials. So far as the record shows, this case has remained on docket without action and accumulating costs for eight years. Judges of the trial courts should not permit causes to remain on docket, unacted on, for an inexcusable length of time. They should require causes to be tried or dismissed, unless there is good cause, which cannot exist for such an unreasonable length of time.